UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS REID,

        Petitioner,

v.                                                Civil No. 05-10124
                                                Honorable David M. Lawson

HUGH WOLFENBARGER,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

The petitioner, Thomas Reid, presently confined at the Straits Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. At the time he instituted this action, the petitioner was confined at the Macomb Correctional Facility, where the respondent is the warden. In his application, the petitioner challenges his conviction for armed robbery, Michigan Compiled Laws § 750.529, on the ground that defense counsel was ineffective because he failed to seek suppression of statements made in the absence of counsel, failed to conduct a pre-trial investigation, and operated under a conflict of interest. The respondent has filed an answer to the petition contending that the claims lack merit. The Court finds that the petitioner's claims do not warrant habeas relief and will therefore deny the petition.

I.

The petitioner's conviction arises from the armed robbery of the Telway Burger restaurant in Detroit, Michigan on May 4, 2001. The petitioner was arrested that same day. A warrant charging the petitioner with the Telway robbery was issued on May 6, 2001. The petitioner was arraigned on May 7, 2001. While in police custody on May 9, 2001, the petitioner was questioned about the robbery of another restaurant, George's Coney Island. The petitioner denied committing

the George's robbery but admitted acting as a lookout in the Telway robbery and signed a written statement to that effect.

Prior to trial, defense counsel moved to suppress the petitioner's police statement, in which he confessed to participating in the robbery, on the ground that it was involuntary. The trial court conducted a hearing and denied the motion. The case proceeded to trial.

At trial, restaurant employees described the robbery and testified that the robbery was committed by two black males. One was armed and wearing a Halloween mask; the other was taller and wearing a ski mask. The witnesses could not identify the petitioner as one of the participants.

Border Patrol Agent Robert Lindeman testified that he heard a report of the robbery over the radio while in the area of the restaurant. He saw two black males walking nearby and ordered them to come to hime. One of the them yelled that they had not done anything, and both of them ran away. Approximately five minutes later, Agent Lindeman saw the same two males in Detroit Police custody. He identified the petitioner as the one of them.

Detroit Police Officers Allen Williams and John Watkins found the masks and a toy gun, believed to have been used in the robbery, on Fern Street, one block north of Pelouze Street. Detroit Police Officer Donnie Espinoza testified that the police found the petitioner crouching outside a home on Pelouze Street. When the police confronted the petitioner, he got up and ran. Officer Espinoza apprehended the petitioner, arrested him, and placed him in the patrol car with another suspect. The police found $79 in crumpled bills on the northwest corner of the Pelouse Street property. Officer Espinoza testified that the petitioner was breathing heavily and smelled like a campfire when he was arrested. One of the masks identified as being used in the robbery had a similar odor. The other suspect was arrested in front of a burned out vacant house on Horacial

Street. Both suspects were put in the patrol car while the police continued their investigation. An officer advised them that the video camera was activated. The videotape depicted the petitioner asking the other suspect what he did with the gun and the other suspect asking the petitioner what they are going to do. The videotape was admitted into evidence and played for the jury.

Detroit Police Officer Alejandro Parra testified that he obtained a signed statement from the petitioner on May 9, 2001 in which he admitted acting as a lookout for the Telway robbery. The question-and-answer formatted statement was admitted into evidence and read into the record.

The petitioner also testified at trial. He denied participating in the robbery, claiming that he was in the wrong place at the wrong time. The petitioner said that he was in the area of Michigan and Martin to retrieve identification from his broken-down car when he saw "Chris" and another unidentified male. As they walked toward the library, Chris told him to wait there while he and the other male went to the restaurant. A few minutes later, Chris and the other male came running out of the restaurant wearing masks. The petitioner thought they may have robbed the restaurant, so he ran down Martin to Pelouze. He started walking and met Chris. When the police approached, the petitioner fled. He was caught a few moments later and arrested. The petitioner claimed he did not know that Chris and the other male were going to rob the restaurant. He said that he asked Chris about the gun while they were in the police car because the police kept asking him where it was. The petitioner denied telling Officer Parra that he was a lookout for the robbery and claimed that he only read the first and last page of his police statement because he was upset.

At the conclusion of trial, the jury found the petitioner guilty of armed robbery. The trial court subsequently sentenced him as a habitual offender to eight to twenty years imprisonment.

Following sentencing, the petitioner, through new counsel, filed a motion for new trial claiming that trial counsel was ineffective for failing to seek suppression of his police statement on the basis that it was taken in violation of his right to counsel. The trial court denied the motion, finding that although counsel was deficient for failing to raise the issue, counsel's performance did not prejudice the petitioner given the other evidence of guilt presented at trial. *See People v. Reid*, No. 01-005951-01 (Wayne Co. Cir. Ct. Oct. 23, 2002).

On appeal, the petitioner raised the following issues:

I.  Was the petitioner denied his Sixth Amendment right to the effective assistance of counsel where his trial counsel failed to seek suppression of his statement to the police on the ground that it was taken in violation of his right to counsel?

II. Was the petitioner denied his Sixth Amendment right to the effective assistance of counsel where his trial counsel failed to conduct a pretrial investigation?

III. Was the petitioner denied his Sixth Amendment right to the effective assistance of counsel where his trial counsel operated under a conflict of interest?

The Michigan Court of Appeals affirmed the petitioner's conviction, finding that his ineffective assistance of counsel and conflict of interest claims did not warrant reversal. *See People v. Reid*, No. 239716, 2003 WL 22113972 (Mich. Ct. App. Sept. 11, 2003). The Michigan Supreme Court denied the petitioner's application for leave to appeal. *See People v. Reid*, 469 Mich. 1016, 677 N.W.2d 27 (2004).

The petitioner's habeas application was timely filed. He now seeks habeas relief, asserting the same claims he asserted on appeal in state court. The respondent opposes the petition, contending that the petitioner's claims lack merit and do not warrant habeas relief.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) ( internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court

shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to seek suppression of the petitioner's confession on the basis that it was taken in violation of the right to counsel. To show a violation of the right to effective assistance of counsel, a petitioner first must establish first that his attorney's performance was deficient "in that it fell below an objective standard of reasonableness." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The second aspect of the test is a demonstration of prejudice, that is, a showing that counsel's deficient performance may have altered the results of the trial. *Ibid*.

An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim, finding that although defense counsel erred in failing to raise this issue, the petitioner could not establish that he was prejudiced by the admission of the confession given the significant evidence of guilt presented at trial. *See Reid*, 2003 WL 22113972 at \*1.

Having reviewed the record and applicable case law, this Court concludes that the Michigan Court of Appeals' decision is consistent with United States Supreme Court precedent and constitutes a reasonable application of federal law and the facts. The Court has grave doubts about the soundness of pretrial strategy that ignores a challenge to the propriety of police practices involving counsel-less interrogations. However, although both elements of the *Strickland* test must be satisfied before a constitutional violation can be found, a court need not analyze the competence element if the petitioner fails to show prejudice. *See Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004). Assuming, as did the Michigan Court of Appeals, that trial counsel was deficient for failing to seek suppression of the petitioner's police statement on the ground that it was taken in violation of his right to counsel, the petitioner has not met his burden of showing that he was prejudiced by counsel's conduct. As noted by the Michigan Court of Appeals, the evidence against the petitioner was substantial. The petitioner was seen with another suspect a few minutes after the robbery occurred. Both fit the description of the robbers. When approached by police, both the petitioner and the other suspect ran away. Money from the robbery was found on the property where the petitioner was hiding. The petitioner smelled strongly of campfire smoke as did one of the masks found nearby, which was identified as being used in the robbery. Given such evidence, the Court finds that the state court reasonably determined that the petitioner failed to establish that he was prejudiced by counsel's conduct in failing to seek suppression of his police statement on the basis

that it was taken in violation of his right to counsel. The petitioner is thus not entitled to habeas relief on this ineffective assistance of counsel claim.

B.

The petitioner next asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to conduct a pre-trial investigation. It is well-established that defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see also Wiggins*, 539 U.S. at 524-29 (holding that the abandonment of an investigation at an unreasonable juncture may prevent counsel from making an informed strategic decision); *Parrish v. Towns*, 395 F.3d 251, 258 (6th Cir. 2005). This duty includes an obligation to investigate all witnesses who may have information concerning a defendant's guilt or innocence. *Parrish*, 395 F.3d at 258. Courts give considerable deference to counsel's reasonable strategic decisions. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

The Michigan Court of Appeals denied relief on this issue, finding that the petitioner had not established that trial counsel would have discovered favorable defense evidence even if counsel had conducted a more thorough pre-trial investigation. *See Reid*, 2003 WL 22113972 at *2. This Court agrees. To be entitled to habeas relief, a petitioner must identify "exculpatory evidence or additional defensive theories that would have been discovered or developed had his counsel investigated the case more thoroughly." *Flores v. Johnson*, 957 F. Supp. 893, 913 (W.D. Tex. 1997). Absent a showing that further investigation would have revealed evidence capable of altering the result at trial, the prejudice prong of *Strickland* is not satisfied. *Harbison*, 408 F.3d at 830. The petitioner in this case has failed to show what witnesses or evidence trial counsel would have discovered upon further investigation before trial, nor has he shown that any such evidence would have been

favorable to the defense. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998). Habeas relief is not warranted on this claim.

C.

Lastly, the petitioner asserts that he is entitled to habeas relief because trial counsel operated under a conflict of interest. The petitioner essentially claims that trial counsel believed he was guilty and therefore failed to defend him adequately. A criminal defendant is entitled to the effective assistance of counsel free from conflict. *See Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978). The United States Court of Appeals for the Sixth Circuit has summarized the difference between the typical ineffective assistance of counsel claim and a claim based on an allegation that counsel was burdened by a conflict of interest as follows:

> Conflict of interest cases involve a slightly different standard than that used in traditional ineffectiveness claims. *See* [*Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir. 1987)]. Where there is conflict of interest, "counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Strickland*, 466 U.S. at 692, 104 S. Ct. 2052. Thus, when an actual conflict of interest exists, prejudice is presumed. *See id.* Prejudice is presumed, however, "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 345-50, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)). Thus, while the rule is rigid, it is not a *per se* rule. *See id.*

*United States v. Hall*, 200 F.3d 962, 965 (6th Cir. 2000).

An attorney who abandons his or her duty of loyalty to the defendant and assists the prosecution in an effort to secure a conviction labors under an obvious conflict of interest. *Thomas v. McLemore*, No. 00-71673, 2001 WL 561216, *10 (E.D. Mich. March 30, 2001) (citing *Osborn v. Shillinger*, 861 F.2d 612, 629 (10th Cir. 1988)); *see also Houchin v. Zavaras*, 107 F.3d 1465, 1471 (10th Cir. 1997). To prevail on a conflict of interest claim, a petitioner must point to specific

instances in the record which suggest an actual conflict or impairment of his interests. *Olden v. United States*, 224 F.3d 561, 565 (6th Cir. 2000); *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987).

The Michigan Court of Appeals rejected this claim, stating that the petitioner "has not shown that counsel's skepticism regarding defendant's claims of innocence affected his representation at trial." *People v. Reid*, 2003 WL 22113972 at *2. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The petitioner fails to point to specific instances in the record that show that defense counsel sided with the prosecution or failed to subject its case to meaningful adversarial testing. Prejudice to the petitioner will not be presumed. *See Houchin*, 107 F.3d at 1471; *Thomas*, 2001 WL 561216 at *11. The petitioner has not shown that defense counsel expressed a belief in his guilt to the jury or the court, nor has he shown that defense counsel acted or failed to act based upon any such personal belief. The petitioner therefore has failed to establish that defense counsel operated under a conflict of interest or otherwise abandoned his duty of loyalty to the petitioner. Habeas relief is not warranted on this claim.

### III.

For the reasons stated, the Court concludes that the decision of the Michigan Court of Appeals is neither contrary to nor an unreasonable application of federal law as determined by the United States Supreme Court.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [dkt # 1] is

**DENIED**.

                                            s/David M. Lawson
                                            DAVID M. LAWSON
                                            United States District Judge

Dated: October 10, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 10, 2006.

                                    s/Felicia M. Moses
                                    FELICIA M. MOSES